1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

                           ----oo0oo----

11

12   J & J SPORTS PRODUCTIONS,          NO. CIV. 1:14-1347 WBS JLT
     INC.,
13                                       MEMORANDUM AND ORDER RE: MOTION
               Plaintiff,                FOR SUMMARY JUDGMENT
14
          v.
15
     THOMAS C. JOHNS, individually
16   and d/b/a DESERT TRADING POST
     MARKET AND BAR,
17
               Defendant.
18

19

20                         ----oo0oo----

21          Plaintiff J & J Sports Productions, Inc., brought this

22   action against defendant Thomas C. Johns, individually and doing

23   business as Desert Trading Post Market and Bar, arising from

24   defendant's allegedly unauthorized public exhibition of a

25   televised sporting event.  Defendant now moves for summary

26   judgment on all of plaintiff's claims pursuant to Federal Rule of

27   Civil Procedure 56.

28   ///

                                  1

I.   <u>Factual and Procedural Background</u>

        Plaintiff is a closed-circuit distributor of sports and entertainment programming and owned the exclusive nationwide commercial distribution rights to the broadcast of "'The One' Floyd Mayweather, Jr. v. Saul Alvarez WBC Light Middleweight Championship Fight Program," including all undercard bouts and fight commentary (the "Event"). (Gagliardi Aff. ¶¶ 3-4, Ex. 1 (Docket No. 19-5).)  The Event was televised on September 14, 2013 via closed-circuit television. (<u>Id.</u>)  Plaintiff marketed and sublicensed the right to broadcast the Event to commercial establishments, including bars and restaurants, in California. (<u>See id.</u> ¶ 3; Compl. ¶¶ 15-16 (Docket No. 1).)  The commercial establishments were required to pay a sublicense fee to plaintiff to broadcast the Event. (Gagliardi Aff. ¶¶ 3, 8, Ex. 2.)  The fee was calculated based on each establishment's fire code occupant capacity. (<u>Id.</u>)

        The satellite signal containing the Event was encrypted to prevent its unauthorized interception or receipt; the Event was not available to, or intended for, the general public. (<u>Id.</u> ¶ 11.)  Plaintiff authorized its sublicensees to receive the decrypted signal by notifying their satellite providers, including DirecTV and DISH Network, to transmit the signal to them upon their payment of the sublicense fee. (<u>Id.</u> Ex. 2.) Plaintiff also hired investigators to visit non-sublicensee commercial establishments on the night of the Event to identify any businesses that exhibited the Event without a sublicense. (<u>Id.</u> ¶ 6.)

        Defendant was the owner of Desert Trading Post Market

and Bar, a commercial establishment located at 915 North Wheeler Ridge Road, Arvin, California 93203 (the "Bar").  (Forney Aff. at 2 (Docket No. 19-4); Johns Decl. ¶¶ 1-3 (Docket No. 17-1).)  Defendant did not contract with plaintiff or pay plaintiff a sublicense fee, which would have cost defendant at least $2,200.  (Gagliardi Aff. ¶¶ 3, 7, Ex. 2.)  Rodney Forney, one of plaintiff's investigators, indicates that he visited the Bar on September 14, 2013 at around 6:42 p.m. and observed the Event being shown in Spanish on two big-screen televisions.  (Forney Aff. at 1, 4.)  Mr. Forney paid a $15.00 cover charge to enter the Bar and observed twelve other patrons inside.  (Id. at 2-4.)

Defendant does not dispute that the Event was exhibited in the Bar on September 14, 2013.  (Johns Decl. ¶ 2.)  Instead, he contends that the Bar lawfully exhibited the Event because he purchased it on pay-per-view from DISH Network, the Bar's satellite service provider.  (Id.; Reply at 2-6 (Docket No. 23).)  Defendant states that DISH Network technicians had installed a "Dish Network Latino" system in the Bar and that he "reasonably relied upon Dish Network to provide a lawful signal" for the pay-per-view Event.  (Johns Decl. ¶ 2.)  Defendant has not provided any further evidence regarding the specific nature of the Bar's "Dish Network Latino" account, such as what type of account it was or its terms and conditions.

Plaintiff brought this action asserting claims under (1) 47 U.S.C. § 553 (unauthorized receipt of a cable transmission); (2) 47 U.S.C. § 605 (unauthorized receipt of a radio transmission); (3) California common law conversion; and (4) California's Unfair Competition Law ("UCL"), Cal. Bus. &

3

1    Prof. Code § 17200 et seq.   Presently before the court is

2    defendant's motion for summary judgment on all of plaintiff's

3    claims.  (Def.'s Mot. (Docket No. 17).)   In the alternative,

4    defendant moves for partial summary judgment on plaintiff's

5    requests for enhanced statutory damages under 47 U.S.C. §§ 553

6    and 605, punitive damages, and attorney's fees under California

7    Code of Civil Procedure section 1021.5.  (Id.)

8    II.  Legal Standard

9         Summary judgment is proper "if the movant shows that

10   there is no genuine dispute as to any material fact and the

11   movant is entitled to judgment as a matter of law."  Fed. R. Civ.

12   P. 56(a).  A material fact is one that could affect the outcome

13   of the suit, and a genuine issue is one that could permit a

14   reasonable trier of fact to enter a verdict in the non-moving

15   party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

16   248 (1986).  In deciding a summary judgment motion, the court

17   must view the evidence in the light most favorable to the non-

18   moving party and draw all justifiable inferences in its favor.

19   Id. at 255.

20        The party moving for summary judgment bears the initial

21   burden of establishing the absence of a genuine issue of material

22   fact and can satisfy this burden by presenting evidence that

23   negates an essential element of the non-moving party's case.

24   Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

25   Alternatively, the moving party can demonstrate that the non-

26   moving party cannot produce evidence to support an essential

27   element upon which it will bear the burden of proof at trial.

28   Id.

1        Once the moving party meets its initial burden, the
2   burden shifts to the non-moving party to "designate specific
3   facts showing that there is a genuine issue for trial." Id. at
4   324 (citation omitted).  To carry this burden, the non-moving
5   party must "do more than simply show that there is some
6   metaphysical doubt as to the material facts." Matsushita Elec.
7   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The
8   mere existence of a "scintilla of evidence" is insufficient;
9   there must be evidence on which the trier of fact could
10  reasonably find for the non-moving party. Anderson, 477 U.S. at
11  252.

12  III. Analysis

13       A. 47 U.S.C. § 553 and § 605

14       Section 553(a)(1) provides that "[n]o person shall
15  intercept or receive or assist in intercepting or receiving any
16  communications service offered over a cable system, unless
17  specifically authorized to do so by a cable operator or as may
18  otherwise be specifically authorized by law."  47 U.S.C.
19  § 553(a)(1).  "In other words, section (a)(1) prohibits both
20  illegally receiving cable programming and helping others to
21  illegally receive cable programming by manufacturing or
22  distributing equipment that allows a person to receive cable
23  programming without authorization." J & J Sports Prods., Inc. v.
24  Manzano, Civ. No. C-08-1872, 2008 WL 4542962, at *2 (N.D. Cal.
25  Sept. 29, 2008).

26       Section 605 "prohibits the unauthorized receipt and use
27  of radio communications for one's own benefit or for the benefit
28  of another not entitled thereto." DirecTV, Inc. v. Webb, 545

F.3d 837, 844 (9th Cir. 2008) (citations omitted).  Although

§ 605 did not originally address television signal piracy,

amendments made to the statute in the 1980s "extended [its] reach

to the unauthorized reception or interception of television

programming," including satellite television signals.  Id. at

843-44.  Section 605 thus "prohibits commercial establishments

from intercepting and broadcasting to its patrons satellite cable

programming."  Kingvision Pay-Per-View v. Guzman, Civ. No. C-09-

217, 2009 WL 1475722 CRB, at *2 (N.D. Cal. May 27, 2009).

Both § 553 and § 605 provide aggrieved parties a

private civil cause of action against violators.  47 U.S.C. §§

553(c)(1), 605(e)(3)(A).  Both are strict liability statutes, and

as such, a plaintiff is not required to prove "willfulness" to

establish a defendant's liability.  47 U.S.C. §§ 553(c)(3)(C),

605(e)(3)(C)(iii); Joe Hand Promotions, Inc. v. Albright, Civ.

No. 2:11-2260 WBS, 2013 WL 2449500, at *3 (E.D. Cal. June 5,

2013).  Rather, willfulness is relevant only to the issue of

damages.  Doherty v. Wireless Broad. Sys. of Sacramento, Inc.,

151 F.3d 1129, 1131 (9th Cir. 1998) ("The remedial provisions in

both Sections 553 and 605 take into consideration the degree of

the violator's culpability and provide for reduced damages in

those instances where the violator was unaware of the

violation.").

1.  47 U.S.C § 553

"A signal pirate violates section 553 if he intercepts

a cable signal, [and] he violates section 605 if he intercepts a

satellite broadcast."  Manzano, 2008 WL 4542962, at *2.  It is

undisputed that the Bar received the broadcast signal containing

6

the Event over a satellite signal, and not a cable signal.  (See
Johns Decl. ¶ 2.)  Since defendant did not receive the Event via
a cable signal, § 553 does not apply here.  Plaintiff concedes
this point and thus does not oppose summary judgment on its § 553
claim.  (Opp'n at 3 n.1 (Docket No. 19).)  Accordingly, the court
must grant defendant's motion for summary judgment on plaintiff's
§ 553 claim.

> 2.  <u>47 U.S.C § 605</u>

Since defendant received the Event via a satellite
signal, § 605 applies.  <u>See</u> <u>J & J Sports Prods., Inc. v. 291 Bar
& Lounge, LLC</u>, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009).  Because
§ 605 is a strict liability statute, plaintiff must only prove
that defendant exhibited the Event in the Bar without plaintiff's
authorization.  <u>See</u> 47 U.S.C. § 605(e)(3)(C)(iii) (imposing
liability upon violators even when "the violator was not aware
and had no reason to believe that his acts constituted a
violation of [§ 605]"); <u>J & J Sports Prods., Inc. v. Bath</u>, Civ.
No. F-11-1564 LJO SAB, 2013 WL 5954892, at *5 (E.D. Cal. Nov. 7,
2013).  It is undisputed that defendant exhibited the Event in
the Bar on September 14, 2013 without paying a sublicense fee or
obtaining authorization from plaintiff.  (Gagliardi Aff. ¶ 7;
Johns Decl. ¶¶ 1-3.)  Accordingly, there is sufficient evidence
to establish defendant's liability under § 605.  <u>See</u> <u>Albright</u>,
2013 WL 2449500, at *5-6.

Furthermore, defendant's argument that DISH Network
authorized the Bar's broadcast of the Event is unavailing.
Courts have found § 605 violations "where defendants purchased
the program through their satellite or cable provider, but

7

1  thereafter exhibited the program in their commercial

2  establishments without authorization from the exclusive

3  licensee." J & J Sports Prods., Inc. v. Nguyen, Civ. No. 13-2008

4  LHK, 2014 WL 60014, at *4 (N.D. Cal. Jan. 7, 2014); see Joe Hand

5  Promotions, Inc. v. Jorkay, LLC, Civ. No. 5:10-536-D, 2013 WL

6  2447867, at *2 (E.D.N.C. June 5, 2013) ("Although defendants

7  purchased the event from DirecTV, they do not avoid liability for

8  broadcasting the event at their establishment without the

9  authorization of the exclusive licensee."); J & J Sports Prods.,

10  Inc. v. Rivas, Civ. No. 10-760 GKF TLW, 2012 WL 3544834, at *1 &

11  n.2 (N.D. Okla. Aug. 16, 2012) (finding a § 605 violation where

12  defendants "placed an order for the Fight on a DISH Network

13  residential account number, paying a fee of $54.95, but broadcast

14  the Fight at the restaurant, without paying the commercial

15  licensing fee of $2,200.00"); J & J Sports Prods., Inc. v.

16  Phelan, Civ. No. 08-486 OWW DLB, 2009 WL 3748107, at *10 (E.D.

17  Cal. Nov. 5, 2009) ("The mere fact that Comcast did, in fact,

18  transmit the Boxing Program to [the bar] on the night of the

19  fight does not show that Comcast, in fact, possessed the

20  requisite authority to do so."); Garden City Boxing Club, Inc. v.

21  Vinson, 2003 WL 22077958, at *2 (N.D. Tex. Sept. 3, 2003) ("The

22  fact that [the owner of the bar] may have purchased and lawfully

23  received the Lewis-Tyson fight from DirecTV does not immunize her

24  from liability [under § 605] for then broadcasting the event to

25  patrons at her bar without obtaining authorization from

26  plaintiff, the exclusive licensee.").

27        Defendant also argues that plaintiff is not entitled to

28  relief under § 605 because there is no evidence that defendant

1   intercepted the satellite signal containing the Event.  This

2   argument fails because § 605 may be violated either by the

3   interception or the receipt of a satellite signal.  See Webb, 545

4   F.3d at 848.  Section 605 also prohibits divulging or publishing

5   information from an unauthorized signal reception or using that

6   information for one's "own benefit or for the benefit of another

7   not entitled thereto."  Id.  Moreover, "direct evidence of signal

8   piracy is not required to prove unlawful interception" and

9   circumstantial evidence may suffice.  Id. at 844 ("Signal piracy

10  is by its nature a surreptitious venture and direct evidence of

11  actual interception may understandably be hard to come by.").

12          Relying on Joe Hand Promotions, Inc. v. Alvarado, Civ.

13  No. CV F-10-907 LJO JLT, 2011 WL 1740536, at *7 (E.D. Cal. May 4,

14  2011), defendant also argues that to establish liability under

15  § 605, plaintiff is required to prove that defendant authorized

16  the exhibition of the Event, benefited from the exhibition, and

17  had control over the Bar's televisions during the exhibition.

18  These elements are not found in § 605.  Rather, courts have

19  applied them to determine "individual liability" in § 605 actions

20  that are brought against "both a corporation and an individual."

21  Albright, 2013 WL 2449500, at *3; see J & J Sports Prods. v.

22  Flores, 913 F. Supp. 2d 950, 954 (E.D. Cal. 2012) (Ishii, J.).[1]

23          This action, however, has no corporate defendant.

24  Defendant was "doing business as" the Bar during the alleged

25

26          [1]   Although there was no corporate defendant in Alvarado,
    the district court based the legal standard in that case on 291
27  Bar & Lounge, 648 F. Supp. 2d at 473, which involved an action
    against both a corporate defendant and its alleged owner in his
28  individual capacity.

1    violation and plaintiff has sued defendant in his capacity as the

2    Bar's owner.  (Compl. ¶ 7; Johns Decl. ¶¶ 1-3; Pare Decl. Ex. A

3    at 29-30 (Docket No. 17-3).)  Plaintiff is thus not required to

4    prove the above elements to hold defendant liable under § 605.

5    See Albright, 2013 WL 2449500, at *4 ("It was defendant's

6    commercial establishment that broadcast the Program without

7    authorization and, having chosen not to organize his business as

8    a corporation or other form that would create a legal identity

9    separate from its owners, he may be held liable for its

10   wrongdoing.") (citation and alterations omitted).

11        Accordingly, because defendant exhibited the Event in

12   the Bar without paying a sublicense fee or obtaining plaintiff's

13   authorization, the court must deny defendant's motion for summary

14   judgment as to plaintiff's § 605 claim.

15            3.   Enhanced Statutory Damages under § 605

16        Defendant requests summary judgment on plaintiff's

17   request for enhanced statutory damages under § 605.  (Def.'s Mot.

18   at 10-14.)  In the event of a § 605 violation, a plaintiff must

19   elect to recover either (1) actual damages and any profits that

20   the defendant made as a result of the violation, or (2) statutory

21   damages between $1,000 and $10,000, "as the court considers

22   just."  47 U.S.C. § 605(e)(3)(C)(i)(I)-(II).  If the court finds

23   that defendant committed the § 605 violation "willfully and for

24   purposes of direct or indirect commercial advantage or financial

25   gain," the court in its discretion may enhance the actual or

26   statutory damage award by up to $100,000. Id. § 605(e)(3)(C)(ii).

27   Alternatively, if the court finds that the defendant "was not

28   aware and had no reason to believe that his acts constituted a

                                   10

1  violation of [§ 605], the court in its discretion may reduce the

2  award of damages to a sum of not less than $250." Id.

3  § 605(e)(3)(C)(iii).

4         "Courts in this circuit have granted widely varying

5  awards ranging from near the minimum statutory award of $1,000

6  [without any reduction] to near the maximum of $110,000,

7  depending on such factors as the capacity of the establishment,

8  the number of patrons in attendance, and whether a cover charge

9  was required for entrance." J & J Sports Prods., Inc. v.

10 Marcaida, 10-5125 SC, 2011 WL 2149923, at *3 (N.D. Cal. May 31,

11 2011).  Plaintiff here has elected to pursue maximum statutory

12 damages of $10,000 under § 605(e)(3)(C)(i)(II) and the maximum

13 statutory enhancement of $100,000 under § 605(e)(3)(C)(ii).

14 (Compl. ¶ 22.)

15        Defendant argues against plaintiff's request for

16 enhanced damages because the Bar only had twelve patrons present

17 during the Event's exhibition, had charged its normal price for

18 beer, did not advertise that it was going to broadcast the Event,

19 and has since gone out of business.  (Johns Decl. ¶¶ 2-3.)

20 Plaintiff, however, has submitted uncontroverted evidence that

21 signal pirates do not generally advertise unlawful broadcasts in

22 order to avoid detection, but promote them by word of mouth

23 instead.  (Gagliardi Aff. ¶ 16.)  Further undisputed evidence

24 shows that businesses generally do not increase the costs of food

25 or drink on the night of a broadcasted program.  (Id. ¶ 17.)  The

26 record thus indicates that defendant's failure to advertise the

27 Event's exhibition or raise the price for beer does not

28 necessarily establish that his actions were not willful or

1    committed "for purposes of direct or indirect commercial

2    advantage or private financial gain."  47 U.S.C.

3    § 605(e)(3)(C)(ii).

4         Defendant also does not dispute that he required

5    patrons to pay a $15.00 cover charge to gain admission into the

6    Bar on the night of the Event.  (Forney Aff. at 2-3; Johns Decl.

7    ¶ 2.)  "An award of enhanced damages is appropriate where the

8    defendant imposes a cover charge or admission fee."  J & J Sports

9    Prods., Inc. v. Mendoza, Civ. No. 1:14-1361 JAM BAM, 2015 WL

10   5009000, at *4 (E.D. Cal. Aug. 20, 2015); J & J Sports Prods.,

11   Inc. v. Cano, Civ. No. 1:11-674 LJO, 2013 WL 1964829, at *7 (E.D.

12   Cal. May 10, 2013) (awarding enhanced statutory damages under

13   § 605 where patrons paid a cover charge).  Accordingly, the court

14   must deny defendant's motion for summary judgment on plaintiff's

15   request for enhanced statutory damages under § 605.

16        B. Conversion

17        Under California law, conversion requires a showing of

18   (1) plaintiff's ownership of a right to possession of property;

19   (2) defendant's wrongful disposition of plaintiff's property

20   right; and (3) damages.  See G.S. Rasmussen & Assocs. v. Kalitta

21   Flying Serv., Inc., 958 F.2d 896, 906 (9th Cir. 1992).  The

22   exclusive right to distribute a broadcast signal to commercial

23   establishments constitutes a "right to possession of property"

24   that satisfies the first element of a conversion claim under

25   California law.  DirecTV, Inc. v. Pahnke, 405 F. Supp. 2d 1182,

26   1189-90 (E.D. Cal. 2005) (Wanger, J.).

27        Defendant argues that plaintiff's conversion claim

28   fails because "there is no evidence that defendant intentionally

1   interfered with plaintiff's property, or that the plaintiff was

2   harmed, or that the defendant's conduct caused the alleged harm."

3   (Def.'s Mot. at 7.)   Conversion is a strict liability tort and

4   questions of good faith, lack of knowledge, and motive are

5   ordinarily immaterial.   In re Emery, 317 F.3d 1064, 1069 (9th

6   Cir. 2003).   Furthermore, there is sufficient evidence in the

7   record to establish defendant's liability for conversion here.

8        Plaintiff owned the exclusive commercial distribution

9   rights to broadcast the Event.   (Gagliardi Aff. ¶¶ 3-4, Ex. 1.)

10   Defendant did not obtain a sublicense from plaintiff, yet

11   exhibited the Event in the Bar on September 14, 2013.   (Id. ¶ 3,

12   7; Johns Decl. ¶¶ 1-3.)   Defendant's unauthorized exhibition

13   constituted conversion by a wrongful disposition of plaintiff's

14   exclusive property right to broadcast the Event.   See Mendoza,

15   2015 WL 5009000, at *6.   The evidence submitted by plaintiff also

16   indicates that it charged a minimum of $2,200 for a commercial

17   sublicense to exhibit the Event.   (Gagliardi Aff. Ex. 2.)

18   Consequently, plaintiff has established damages of at least

19   $2,200 and states a claim for conversion against defendant.   See

20   Mendoza, 2015 WL 5009000, at *6.

21        Accordingly, the court must deny defendant's motion for

22   summary judgment as to plaintiff's claim for conversion.

23        1.   Compensatory Damages for Conversion

24        Plaintiff requests "compensatory damages in an amount

25   according to proof" for its conversion claim.   (Compl. at 10,

26   ¶ 31).   Damages for conversion are measured by the value of the

27   property at the time of the conversion.   Cal. Civ. Code § 3336.

28   "In the context of broadcast piracy, damages for conversion have

13

1    often been calculated based upon the amount that the defendant

2    would have been required to pay for a proper sublicensing

3    agreement."  Joe Hand Promotions, Inc., v. Dhillon, Civ. No.

4    2:15-1108 MCE KJN, 2015 WL 7572076, at *6 (E.D. Cal. Nov. 25,

5    2015).  At the hearing on this matter, plaintiff's counsel

6    confirmed that plaintiff requests conversion damages for the

7    value of the sublicensing fee that defendant was required to pay

8    to broadcast the Event.[2]  Defendant argues that permitting

9    plaintiff to recover conversion damages in addition to statutory

10   damages under § 605 would result in impermissible double

11   recovery.  (Def.'s Mot. at 8.)[3]

---

[2]    Although plaintiff charged a minimum fee of $2,200, it
charged a higher fee to commercial establishments with seating
capacities of over one hundred.  (Gagliardi Aff. ¶ 8, Ex. 2).
Plaintiff has not provided evidence of the Bar's actual capacity
here.  Although plaintiff's investigator described the Bar as a
"one room establishment," he did not indicate the Bar's overall
capacity.  (See Forney Aff. at 4.)  The investigator's pictures
of the Bar's exterior, however, suggest that the Bar had a
capacity of less than one hundred, which reflects a $2,200 fee.
(Id. at 4-9; Gagliardi Aff. Ex. 2.)

[3]    Defendant also argues that because plaintiff must elect
either actual or statutory damages under § 605, to allow it to
recover for conversion damages on top of statutory damages would
disregard § 605's requirement that plaintiff make an election.
(Def.'s Mot. at 8-9.)  The Ninth Circuit has rejected this
argument in a similar context and allowed damages under both the
Copyright Act and Lanham Act, even though the Copyright Act
requires that a plaintiff elect actual or statutory damages, and
a plaintiff's recovery of lost profits and disgorgement of a
defendant's profits is considered double recovery under the
Lanham Act.  Nintendo of Am., Inc. v. Dragon Pac. Int'l, 40 F.3d
1007, 1010 (9th Cir. 1994); J & J Sports Prods., Inc. v. Brown,
Civ. No. S-10-3233 KJM, 2011 WL 6153355, at *4 (E.D. Cal. Dec.
12, 2011) (observing that the remedial structures of the
Copyright Act and the Federal Communications Act "are closely
parallel"); see also Theme Promotions, Inc. v. News Am. Mktg.
FSI, 546 F.3d 991, 1005-06 (9th Cir. 2008) (upholding an award of
compensatory damages for federal antitrust violations and
California tort law).

Several courts in this circuit generally award conversion damages in addition to statutory and enhanced damages under § 605, although courts in other districts have taken the opposite approach.  Compare J & J Sports Prods., Inc. v. Paolilli, Civ. No. 1:11-680 LJO, 2012 WL 87183, at *1 (E.D. Cal. Jan. 9, 2012) (awarding $6,200 in conversion damages in addition to $10,000 in statutory damages and $30,000 in enhanced damages under § 605), and Joe Hand Promotions, Inc. v. Dang, Civ. No. 5:11-508 EJD, 2011 WL 6294289, at *3 (N.D. Cal. Dec. 14, 2011) (awarding $1,100 in conversion damages in addition to $7,000 in statutory damages and $1,000 in enhanced damages under § 605), with Joe Hand Promotions, Inc. v. DeClemente, Civ. No. 5:11-621-D, 2013 WL 5460189, at *3 (E.D.N.C. Sept. 30, 2013) (declining to award conversion damages in addition to statutory damages under § 605 because it would result in double recovery).  This court has sometimes declined to award conversion damages where statutory damages under § 605 have sufficiently compensated the plaintiff.  E.g., J & J Sports Prods. Inc. v. Meza, Civ. No. 1:14-1427 WBS, 2015 WL 1787479, at *6 (E.D. Cal. Apr. 20, 2015).

It would be premature to determine at this stage of the proceedings whether statutory damages under § 605 would sufficiently compensate plaintiff in this case such that conversion damages would be duplicative.  California Civil Code section 3336 provides for the recovery of conversion damages only after a defendant is found liable for the "wrongful conversion of personal property."  Section 605 likewise provides for the recovery of statutory damages only after a defendant is found liable for a § 605 violation.  See 47 U.S.C. § 605(e)(3).

1    Ruling on defendant's request to limit conversion

2   damages at this time would be premature because defendant has not

3   been found liable for either conversion or a § 605 violation.

4   Cf. Siegel v. Edmark Auto Inc., Civ. No. 1:09-443 CWD, 2011 WL

5   3439937, at *21 (D. Idaho Aug. 8, 2011) (finding that a motion

6   for partial summary judgment on the issue of liquidated damages

7   was premature because liability had not been determined under the

8   governing statute); see also AIG Ret. Servs., Inc. v. Altus Fin.

9   S.A., 365 F. App'x 756, 760 (9th Cir. 2010) (reversing grant of

10  summary judgment where triable issues of fact remained as to the

11  plaintiff's ability to prove its damages to a reasonable

12  certainty).

13    Limiting conversion damages at this time is also

14  inappropriate because a question of fact exists regarding whether

15  defendant had acted in good faith allowing him to avoid liability

16  for conversion under California law.  California recognizes a

17  good faith purchaser defense if a party can show that he (1) paid

18  value for the property, (2) purchased it in good faith, and (3)

19  did so without actual or constructive notice of another's rights

20  to the property.  Oakdale Vill. Grp. v. Fong, 43 Cal. App. 4th

21  539, 547 (3d Dist. 1996); see J & J Sports Prods. v. Coyne, 857

22  F. Supp. 2d 909, 919 (N.D. Cal. 2012) (although defendants

23  "purchased the Program in good faith," they were liable for

24  conversion because they "had constructive notice of J & J's

25  property right").

26    Accordingly, the court will deny defendant's request to

27  limit plaintiff's actual conversion damages without prejudice and

28  will defer its ruling to such time as the court renders a verdict

16

1   if this matter proceeds to trial.[4]

2              2.   <u>Punitive Damages for Conversion</u>

3         Defendant moves for summary judgment on plaintiff's

4   request for punitive damages.  (Def.'s Mot. at 14-15.)  Plaintiff

5   does not oppose this motion as to its conversion claim, which is

6   the only claim for which plaintiff has requested punitive

7   damages.  (Compl. at 9-10, ¶¶ 30-31; Opp'n at 13, 19.)

8   Accordingly, the court will grant defendant's motion for summary

9   judgment on plaintiff's request for punitive damages under the

10  conversion claim.

11       C. <u>UCL Claim</u>

12        The California UCL prohibits "any unlawful, unfair or

13  fraudulent business act or practice."  Cal. Bus. & Prof. Code §

14  17200.  "An unlawful business practice under [the UCL] is an act

15  or practice, committed pursuant to business activity, that is at

16  the same time <u>forbidden by law</u>." <u>Progressive W. Ins. Co. v. Yolo</u>

17  <u>Cty. Sup. Ct.</u>, 135 Cal. App. 4th 263, 287 (3d Dist. 2005)

18  (citation omitted).  The UCL thus "borrows violations of other

19  laws and treats them as unlawful practices that the [UCL] makes

20  independently actionable." <u>Cel-Tech Commc'ns, Inc. v. L.A.</u>

21  <u>Cellular Tel. Co.</u>, 20 Cal. 4th 163, 180 (1999) (citations

22  omitted).  "Virtually any law--federal, state or local--can serve

23  as a predicate for an action under" the UCL.  <u>Ticconi v. Blue</u>

24  <u>Shield of Cal. Life & Health Ins. Co.</u>, 160 Cal. App. 4th 528, 539

25  (2d Dist. 2008).  To prevail on a UCL claim, a plaintiff must

26  "make a twofold showing: he or she must demonstrate injury in

27  ─────────────

28        [4]   Plaintiff seeks a bench trial in this action.  (Joint
    Status Report at 5 (Docket No. 13).)

17

1  fact and a loss of money or property caused by unfair

2  competition."  Peterson v. Cellco P'ship, 164 Cal. App. 4th 1583,

3  1590 (4th Dist. 2008).

4         As discussed above, plaintiff has provided sufficient

5  evidence to maintain that defendant's exhibition of the Event

6  without plaintiff's authorization was in violation of law.

7  Defendant's actions also occurred pursuant to the business

8  activity of operating the Bar.  The evidence further indicates

9  that plaintiff suffered an injury in fact and a loss of money in

10 the amount of the sublicense fee that defendant would have been

11 required to pay to broadcast the Event lawfully.  (Gagliardi Aff.

12 ¶¶ 3, 7, Ex. 2.)  There is thus sufficient evidence to establish

13 defendant's liability under the UCL.  See Joe Hand Promotions,

14 Inc. v. Bragg, Civ. No. 13-2725 BAS JLB, 2014 WL 2589242, at *8

15 (S.D. Cal. June 10, 2014); Nguyen, 2014 WL 60014, at *6.

16        Accordingly, the court must deny defendant's motion for

17 summary judgment on plaintiff's UCL claim.

18             1.   Restitution under the UCL

19        Defendant argues in the alternative that plaintiff is

20 not entitled to restitution under the UCL because there is no

21 evidence that defendant acquired any money as a result of his

22 exhibition of the Event.  (Def.'s Mot. at 9-10.)[5] An individual

23 may be required to pay restitution if he or she is unjustly

24 enriched at the expense of another.  Ghirardo v. Antonioli, 14

25        [5]   Defendant suggests that this alone is enough to grant
26 summary judgment in his favor as to the UCL claim.  (Id.)  This
   argument fails because plaintiff also requests injunctive relief
27 under the UCL, (Compl. ¶ 40).  See Kwikset Corp. v. Sup. Ct., 51
   Cal. 4th 310, 337 (2011) (parties may seek an injunction under
28 the UCL whether or not restitution is also available).

18

1    Cal. 4th 39, 51 (1996).  "A person is enriched if he receives a

2    benefit at another's expense," and a "benefit" denotes any form

3    of advantage.  Id.  A benefit is thus conferred "not only when

4    one adds to the property of another, but also when one saves the

5    other from expense or loss."  Id.

6         The evidence in the record establishes that defendant's

7    exhibition of the Event without plaintiff's authorization

8    provided defendant with a benefit by saving him from the expense

9    of paying at least $2,200 for a sublicense fee.  (Gagliardi Aff.

10   ¶¶ 3, 7, Ex. 2.)  There are thus genuine issues of material fact

11   with respect to whether plaintiff may recover restitution under

12   the UCL.  Accordingly, the court must deny defendant's motion for

13   summary judgment on plaintiff's request for restitutionary relief

14   under the UCL claim.

15            2.   Attorney's Fees under California Code of Civil

16                     Procedure section 1021.5

17        Plaintiff seeks attorney's fees under California Code

18   of Civil Procedure section 1021.5 for enforcing the UCL as a

19   private attorney general.  (Compl. ¶ 41.)  Defendant seeks

20   summary judgment on plaintiff's request for attorney's fees under

21   section 1021.5.  (Def.'s Mot. at 10.)  Plaintiff does not oppose

22   defendant's request on this issue. (Opp'n at 17 n.6.)

23        Accordingly, defendant's motion for summary judgment on

24   plaintiff's request for attorney's fees pursuant to California

25   Code of Civil Procedure section 1021.5 will be granted.[6]

26   _____

27        [6]   This does not impact plaintiff's right to attorney's
     fees under § 605.  See 47 U.S.C. § 605(e)(3)(B)(iii) (providing
     full costs and reasonable attorney's fees to a prevailing
28   plaintiff).

                               19

1        IT IS THEREFORE ORDERED that defendant's motion for

2   summary judgment be, and the same hereby is:

3        (1) GRANTED IN PART as to plaintiff's claim under 47

4   U.S.C. § 553 (Count II), request for punitive damages for

5   conversion, and request for attorney's fees under California Code

6   of Civil Procedure section 1021.5; and

7        (2) DENIED IN PART as to plaintiff's claim under 47

8   U.S.C. § 605 (Count I), request for enhanced statutory damages

9   under § 605(e)(3)(C)(ii), claim for conversion (Count III),

10  request for compensatory damages for conversion, claim under

11  California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.

12  Code § 17200 et seq. (Count IV), and request for restitution

13  under the UCL.

14        IT IS SO ORDERED.

15  Dated:   December 4, 2015

16  _____

17  WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28